UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                                                                           Chapter 7

      Annette Apergis,                                   Case No. 1-14-41043-nhl
      *aka* Annette Johnson,
      *aka* Annette K Apergis,
      *aka* Annette Kontogiannis,

                           Debtor.
-----------------------------------------------------------X

## DECISION ON OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION

**Attorneys and Law Firms:**

Lisa Pashkoff, Esq.
Massoud & Pashkoff, LLP
99 Park Avenue, 3rd Floor
New York, NY 10016
*Attorney for Jeffrey Siegel
and Richard Siegel*

Raymond Granger, Esq.
Howard B. Zakai, Esq.
Granger & Associates, LLC
40 Fulton Street, 23rd Floor
New York, NY 10038
*Attorneys for Jeffrey Siegel
and Richard Siegel*

Vincent M. Lentini, Esq.
600 Old Country Road, Suite 202
Garden City, NY 11530
*Attorney for Annette Apergis*

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

The chapter 7 debtor Annette Apergis (the "Debtor") claimed a $150,000 homestead exemption pursuant to § 5206(a) of the New York Civil Practice Law and Rules (the "C.P.L.R."). Creditors Jeffery and Richard Siegel (the "Siegels") object to the Debtor's homestead exemption, arguing that she does not meet the requirements under § 5206 because she did not intend to permanently reside in her home as of the petition date, having moved into the home only a short time before the scheduled foreclosure sale of the property. The Court finds that the Debtor did not lack intent to "permanently reside" as that term is defined by the relevant case law, and that the Debtor is therefore entitled to the full $150,000 exemption.

## I. BACKGROUND

The Debtor and her husband purchased real property located at 16 Woodfield Ln., Glen Head, New York (the "Property") in 2005. Apergis Test. 8, ECF No. 59-1. The Property is on the same block as the Debtor's mother's home, which is located at 12 Woodfield Ln., Glen Head, New York ("12 Woodfield"). In July 2012, the Debtor's husband was incarcerated, leaving the Debtor alone at the Property to care for her two young children. Hr'g Tr. 45, ECF No. 108, Nov. 13, 2014. That same month, the Debtor and her children moved out of the Property and into 12 Woodfield to live with the Debtor's mother. Hr'g Tr. 9, ECF No. 59-1. While the Debtor and her children resided at 12 Woodfield, the Debtor rented the Property to two separate tenants from July 2012 through February 2014. Dep. Tr. 9-10, ECF No. 59-2.

On January 25, 2013, DLJ Mortgage Capital ("DLJ") commenced an action against the Debtor in the Supreme Court of New York, Nassau County, seeking to sell the Property in execution of a default judgment obtained against the Debtor in a prior state court proceeding. By order entered May 1, 2013, Justice Galasso directed the sale of the Property, payment of $150,000 from proceeds of the sale to the Debtor as a homestead exemption, and application of

the surplus proceeds to satisfy DLJ's default judgment. May 1, 2013 Order, ECF No. 75-1. The Siegels then moved to intervene in that action and to vacate Justice Galasso's order. That motion was denied in its entirety, and the Siegels did not take an appeal. July 16, 2013 Order, ECF No. 75-2.

The Property was scheduled to be sold at a sheriff's sale on March 5, 2014. Notice of Sale, ECF No. 59-3. Despite the impending sale, the Debtor moved back into the Property in either late February or early March of 2014, after living at 12 Woodfield for approximately two years. Hr'g Tr. 41-42, ECF No. 108. On March 4, 2014 (the "Petition Date"), creditor Blue Ridge Farms filed an involuntary chapter 7 petition against the Debtor, staying the sale of the Property. Thereafter, the Court granted DLJ's motion for relief from the automatic stay to allow the sale of the Property, which was held on June 11, 2014. The Debtor resided at the Property until early June, just prior to the sale. Dep. Tr. 7, ECF No. 59-2. After the stay was lifted, the Debtor consented to the involuntary petition and filed a complete set of schedules. On Schedule C she claimed a $150,000 homestead exemption in the Property.

The Siegels now object to the Debtor's claimed homestead exemption as creditors in her bankruptcy case. Though the Debtor returned to the Property before the scheduled May 5, 2015 sale, the Siegels argue that she did not evidence intent to reside there permanently in light of the impending sale, and that 12 Woodfield remained her true residence. They therefore assert that the Property ceased to be occupied as the Debtor's residence for longer than one year under C.P.L.R. § 5206(a) and (c), and that she is not entitled to a homestead exemption.[1]

---

[1] C.P.L.R. § 5206 provides in pertinent part:
(a) Property of one of the following types, not exceeding one hundred fifty thousand dollars . . .in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:
    1. a lot of land with a dwelling thereon

2

In response, the Debtor argues that her entitlement to a homestead exemption was already decided by Justice Galasso in his May 1, 2013 Order, and that the denial of the Siegels' motion to intervene and vacate is law of the case. Accordingly, the Debtor contends that the Siegels are precluded from relitigating the homestead issue in this Court. The Debtor alternatively argues that on the facts of her case, she meets all the requirements for entitlement to a homestead exemption under C.P.L.R. § 5206.

## II. DISCUSSION

### A. Preclusion

The Debtor's primary contention is that the Siegels are precluded from litigating the homestead issue in this Court because of Justice Galasso's May 1, 2013 and July 16, 2013 orders, and that her entitlement to the homestead exemption is now law of the case. *See* Hr'g Tr. 17, ECF No. 108. But the May 1, 2013 order does not constitute the law of *this* case. The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added). Though Justice Galasso determined that the Debtor was entitled to a homestead exemption, he did so in the context of state court litigation independent of this bankruptcy case.

The Debtor also asserts that the Rooker-Feldman doctrine precludes a review of Justice Galasso's determination. *See* Letini Letter 2, ECF No. 110. Rooker-Feldman applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and

---

(c) The homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises.

N.Y. C.P.L.R. § 5206(c).

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). In essence, Rooker-Feldman bars a party from "seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

The instant scenario does not fall within the scope of Rooker-Feldman, as the Siegels are not "state-court losers" in the relevant sense. Indeed, because the Siegels' motion to intervene in the state court proceeding was denied, they were not a party bound by the May 1, 2013 order. Siegel, N.Y. Prac. § 183 (5th ed.) ("The intervenor gets no rights as a party unless and until the motion to intervene is granted, at which time she gets them all . . . ."); *Brown v. Waryas*, 255 N.Y.S.2d 724, 726 (N.Y. Supp. Ct. 1965) (citing *United Baking Co. v. Bakery and Confectionery Workers' Union, Local 221*, 257 A.D. 501 (N.Y. App. Div. 1939). As the Siegels were not a party to the state court proceedings and did not litigate the underlying issue in that forum, their objection to the homestead exemption before this Court does not amount to an appeal. Though the Debtor's entitlement to her homestead exemption was previously raised and decided in state court, this alone does not limit this Court's jurisdiction under the Rooker-Feldman doctrine. *Exxon*, 544 U.S. at 287 n.2 (Rooker-Feldman does not "bar federal actions that simply raise claims previously litigated in state court.").

### B. Homestead Exemption Under C.P.L.R. § 5206

All of a debtor's legal or equitable interests in property become property of the bankruptcy estate on the petition date. 11 U.S.C. § 541(a)(1). But an individual debtor may exempt certain assets from administration as property of the estate, including a certain amount on account of the debtor's homestead. 11 U.S.C. § 522(b)(1). As of 2011, New York is an opt-in state, meaning that a debtor may claim either federal or New York exemptions. *See* N.Y. Debt. &

Cred. Law §§ 284, 285 (McKinney 2012); *In re Schneider*, No. 12-7705-ast, 2013 WL 5979756, at *3 (Bankr. E.D.N.Y. Nov. 8, 2013). The Debtor claimed her exemption under 11 U.S.C. § 522(b)(3), which includes any property exempt under applicable non-bankruptcy law. As the Debtor is domiciled in New York, C.P.L.R. § 5206 is the applicable nonbankruptcy law. *See* N.Y. Debt. & Cred. Law § 282.

As of the date of the Petition Date, C.P.L.R. § 5206(a) provided for an exemption of up to $150,000 on real property "owned and occupied as a principal residence." N.Y. C.P.L.R. § 5206(a) (McKinney 2011). "Exemption statutes are to be construed liberally in the favor of a debtor." *In re Moultierie*, 398 B.R. 501, 504 (Bankr. E.D.N.Y. 2008). A party who objects to a debtor's scheduled exemption has the burden of showing that the exemption was improperly claimed. Fed. R. Bankr. P. 4003(c).

By the terms of the statute, ownership and occupancy of the property are essential to the debtor's entitlement to a homestead exemption. N.Y. C.P.L.R. § 5206(a); *In re Bellafiore*, 492 B.R. 109, 113 (Bankr. E.D.N.Y. 2013); *In re Martiny*, 378 B.R. 52, 53 (Bankr. W.D.N.Y. 2007). The statute does not, however, define "principal residence." *In re Stanley*, 461 B.R. 161, 165 (Bankr. E.D.N.Y. 2011). Courts generally understand residency for the purpose of § 5206(a) to turn on two criteria, assessed as of the petition date. *See Bellafiore*, 492 B.R. at 114; *Stanley*, 461 B.R. at 165; *In re Scott*, 233 B.R. 32, 41 (Bankr. N.D.N.Y. 1998). The primary criterion is "actual physical occupancy on a regular basis." *Bellafiore*, 492 B.R. at 113. As a homeowner may have only one principal residence, occupancy must be more regular at that location than at any other. *In re Issa*, 501 B.R. 223, 226 (Bankr. S.D.N.Y. 2013); *Stanley*, 461 B.R. at 165. As a secondary consideration, Courts look to a homeowner's intent to reside permanently in a dwelling. *See Stanley*, 461 B.R. at 165; *Scott*, 233 B.R. at 40. Significantly, the homeowner need

not intend to reside in the property long term. *Bellafiore*, 492 B.R. at 114 ("'[N]othing in C.P.L.R. § 5206(a) even suggests that the homestead exemption is to be conditioned on an intent for long term residency.'") (citing *Martiny*, 378 B.R. at 53); *see also Issa*, 501 B.R. at 226 ("The intent to reside has been defined as 'a bona fide intent to reside there as one's principal residence—not in the future, but on the petition date.'") (quoting *In re Bace*, 364 B.R. 166, 182 (Bankr. S.D.N.Y. 2007), *rev'd sub nom. on other grounds*, *Bace v. Babitt*, No. 07-civ-2421, 2008 WL 800672 (S.D.N.Y. Mar. 25, 2008)).

C.P.L.R. § 5206(c) also addresses the requirement of occupancy, providing:

> The homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises.

N.Y. C.P.L.R. § 5206(c). The Siegels interpret this subsection to prohibit a debtor who fails to occupy property for over a year from claiming an exemption. Objection to Exemption 3, ECF No. 59; Hr'g Tr. 38, ECF No. 108. They draw support for this proposition from the interpretation of C.P.L.R. § 5206(c), as set forth in dicta in *Issa*.[2] However, the Siegels misinterpret this subsection, as the plain language of § 5206(c) provides that the exemption ceases when occupancy ceases. N.Y. C.P.L.R. § 5206(c). The statute's reference to "suspension of occupation" within a one year period refers only to suspension due to damage or destruction of the dwelling. *Scott*, 233 B.R. at 41 n.9 ("Under C.P.L.R. 5206(c), a valid homestead expires whenever actual occupation ceases, unless the suspension of occupation is due to the destruction of the home."); *In re Ellerstein*, 105 B.R. 214, 217 (Bankr. W.D.N.Y. 1989) ("With exceptions not here relevant, the exemption ceases with termination of occupancy."); N.Y. Prac., Enforcing

---

[2] The Siegels' objection also cites three other cases in support of their § 5206(c) argument: *In re Stanley*, 461 B.R. 161 (Bankr. E.D.N.Y. 2011); *In re Rasmussen*, No. 09-72069-ast, 2010 WL 2889558 (Bankr. E.D.N.Y. July 20, 2010); and *In re Moulterie*, 398 B.R. 501 (Bankr. E.D.N.Y. 2008). Objection to Exemption 3, ECF No. 59. These cases are inapposite, as none so much as references C.P.L.R. § 5206(c).

Judgments and Collecting Debts § 6:194 ("If an actual homestead becomes and remains unoccupied by virtue of injury or destruction to the premises, the homestead exemption continues for a period of up to one year from the date of injury or destruction."). In any event, neither *Issa* nor § 5206(c) apply here, because the Debtor did reenter and actually occupy the Property on the Petition Date. And, to the extent that *Issa* construes § 5206(c) to state that a debtor may not claim a homestead exemption if she has ceased occupation of the residence for over a year, this Court disagrees.

Here, the Court is faced only with the question of whether the Debtor's return to the Property in 2014 was sufficient to make it her principal residence on the filing date, thereby entitling her to a homestead exemption. It is unclear precisely when the Debtor moved back into the Property. In deposition, the Debtor testified that the tenants vacated the Property in February 2014, Dep. 10, ECF No. 59-2, and that she moved back into the Property in March of 2014. *Id*. at 7. But at the November 13, 2014 hearing before this Court, the Debtor stated that she moved back into the Property "around February 21st" of 2014. Hr'g Tr. 41, ECF No. 108. In any event, the parties agreed that it did not matter whether the Debtor moved back into the Property in late February or early March 2014, because neither disputed that the Debtor returned to the Property prior to the Petition Date.[3] *Id*. at 42.

The Siegels argue that the Debtor could not have intended to reside permanently at the Property, because she was aware of the impending foreclosure sale. However, a debtor's awareness of an impending sale, even a voluntary sale, does not preclude the homestead exemption. *See Bellafiore*, 492 B.R. at 115–16 (pre-petition sale contract); *see also Martiny*, 378

---

[3]    The Court:  – – nobody here cares for purposes of their argument and their position, whether it was the end of February or the beginning of March.
       Mr. Lentini:  No.
       Ms. Pashkoff:  No, Judge.
Hr'g Tr. 42, ECF No. 108.

B.R. at 53. Provided that a debtor's actual occupancy on the petition date is consistent with primary residency, her knowledge that the property is to be sold post-petition is not dispositive of her intent to reside at the premises for the purposes of the homestead analysis. *See In re Moultierie*, 398 B.R. at 504; *see also Martiny*, 378 B.R. at 53. This is so even where it is clear that a debtor's pre-petition occupancy is meant to convert previously nonexempt property into exempt property. *See Martiny*, 378 B.R. at 54 ("The legislative history for section 522 states that 'the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition . . . . The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.'") (quoting H.R. REP. No. 95-595, at 363, to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), *reprinted in* Bankruptcy Code, Rules & Official Forms, at 268 (Thomson West 2007)); *see also Stanley*, 461 B.R. at 163 (permitting homestead exemption even where the debtor explicitly stated that she moved in order to claim the exemption).[4]

Genuine questions of intent may arise where a debtor's actual occupancy is dubious, or in some way insufficient to show that a property is being used as a primary residence. *See Scott*, 233 B.R. at 40 (holding that debtor's use of a camper on the property for two days without ordinary necessities did not clearly constitute regular occupancy); *see also Issa*, 501 B.R. at 227 (finding that eligibility to claim a homestead exemption turned on debtor's "state of mind as of the filing date" and whether she "constructively occupied" a property that she had not previously occupied for over seven years); *Stanley*, 461 B.R. at 165–67 (relying on a debtor's intent to

---

[4] This, however, is not a case of exemption planning. Initially, the Debtor moved out of the Property to reduce expenses and to obtain her mother's help raising her children. There is no indication that the Debtor intended to create a new residence at 12 Woodfield, and it seems that she had every intention of returning to the Property. Furthermore, a petitioning creditor involuntarily commenced this case against the Debtor. Although the Debtor moved back into the Property shortly before the Petition Date, she did not control the timing of the petition. Accordingly, the Debtor did not explicitly organize her return to the Property to coincide with an anticipated bankruptcy filing for the purpose of claiming a homestead exemption.

occupy one of her two properties as a permanent residence where the court could not determine that one was occupied more regularly than the other on the petition date).  This is not such a case.  The Debtor moved back into the Property prior to the Petition Date, and did not cease meaningful use of the Property until it was ultimately sold approximately three and a half months later.  Though the Siegels demonstrated that the Debtor's occupation of the Property was temporary in light of the impending sale, they failed to meet their burden of establishing that the Debtor did not actually occupy the Property as her principal residence on the Petition Date.

### III.  CONCLUSION

For the foregoing reasons, the objection to the Debtor's claimed homestead exemption is overruled.  A separate order will issue.



**Dated: September 30, 2015**  
      **Brooklyn, New York**

**Nancy Hershey Lord**  
**United States Bankruptcy Judge**